TROPICAL CRAFT CORP. *v.* UNITED STATES (No. 4921)[1]

---
[1] C. A. D. 673.

United States Court of Customs and Patent Appeals, January 22, 1958

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for appellant.
*George Cochran Doub,* Assistant Attorney General and *Richard E. FitzGibbon,* Chief, Customs Section for the United States.

[Oral argument December 5, 1957, by Mr. Jordan and Mr. FitzGibbon]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1860, one judge dissenting, overruling the importer's protest and holding the merchandise here involved to be dutiable under paragraph 1530 (e) of the Tariff Act of 1930 at 35 per centum ad valorem. It was contended by the importer that the merchandise was dutiable at 17½ per centum ad valorem as "footwear known as alpargatas" under the same paragraph as modified by the trade agreement with Argentina, T. D. 50504.

The only issue involved is whether the merchandise is embraced by the following portion of paragraph 1530 (e) as so modified:

"Footwear known as alpargatas, the uppers of which are composed wholly or in chief value of cotton or other vegetable fiber, and with soles composed wholly or in chief value of vegetable fiber other than cotton."

The merchandise and the issue here are identical with those presented in *United States* v. *Tropical Craft Corp.,* 42 C. C. P. A. (Customs) 223, C. A. D. 598, and the record in that case has been incorporated herein.

The merchandise is ladies' footwear which is described at length in our decision in the incorporated case. For present purposes, it is sufficient to state that the footwear comprises an upper of braided fiber, a bottom part of twisted, braided or plaited fiber, and a wooden wedge heel which extends from about the midpoint of the bottom to the rear end of the footwear and which serves to elevate the heel of the wearer about two inches above the ball of the foot.

In the incorporated case, no attempt was made to establish a commercial meaning of "alpargatas" differing from the common meaning. However, testimony of several witnesses was offered by the importer to the effect that the inclusion of a wedge heel did not necessarily

remove footwear from the class known as alpargatas, and that the merchandise under consideration was properly designated by that term.

In our decision in that case, we held such testimony to be advisory only, and insufficient to overcome the dictionary definitions, which established a contrary meaning. It was pointed out in the decision that the dictionaries define an alpargata as a "kind of sandal" or a "sandal-like shoe," and that the definitions of a sandal indicate that it is heelless. From those definitions, it was concluded that footwear including a wedge heel could not be properly classed as alpargatas.

Appellant argues here that our former decision was based entirely on the proposition that sandals have no heels and since the instant merchandise has heels, it cannot be sandals and hence cannot be alpargatas. The only testimony offered here which was not presented in the former case is that of four witnesses who state that sandals have, or at least may have, heels, including wedge heels. Appellant argues that such testimony shows our former conclusion with respect to sandals being heelless was incorrect.

There is no contention here by appellant that a commercial meaning of "alpargata" or "sandal" differing from the common meaning has been established. Accordingly, the testimony presented must relate to the common meaning of those words and hence is advisory only.

The four new witnesses testified in June 1956 to the following effect:

Al Lewis stated that he was a shoe stylist and had been extensively active in the sandal business "for the last fifteen years." He said that he "never saw a sandal without a heel" and that a heel is definitely an essential part of the footwear known as sandals. His testimony contains no mention of alpargatas.

Albert Freedman testified that he started in the shoe industry in 1936, was in the army from 1941 to 1945, and then returned to the shoe business where he has remained ever since. In his opinion "the vast majority of sandals have heels possibly with the exception of one per cent." He stated that he did not know what an alpargata was, and that the term was not generally known in this country.

Samuel Rappaport, a manufacturer of heels, stated that he had been in the footwear business since 1928, that "All sandals have heels that I have been manufacturing or seen manufactured in the last sixteen years when they became very strong" and that "almost all" the sandals he had seen in the past fifteen years had heels. He did not manufacture alpargatas and knew only "In a general way" what they were.

Michael M. Leder, the sales manager of a shoe manufacturing concern, stated that he had been engaged in the footwear business

since 1939, that sandals have heels, and that an open heel is one of the characteristics that identify an article of footwear as a sandal. He gave no testimony as to alpargatas.

The pertinent question here is the meaning of the terms "sandals" and "alpargatas" in 1941 when the trade agreement with Argentina was adopted and, while some of the testimony above summarized refers to 1941 and times prior thereto, it is clear that much of it relates to the meaning of the words in question after that date. Moreover, the testimony is to the effect that all sandals, or all but a negligible number of them, have heels, and that a heel is an "essential part" and a distinguishing characteristic of a sandal, from which it would follow that footwear without heels is not "sandal-like," and hence is not alpargatas. Such a conclusion is in conflict with the stipulated evidence of record which shows that a number of heelless articles offered by appellant as Exhibit 6 are agreed to be alpargatas. It is also in conflict with the dictionaries cited in our decision in the incorporated case, which make no mention of heels in connection with sandals or alpargatas and, where they illustrate sandals, show them as being without heels.

It is further to be noted that none of the new witnesses identified the articles of merchandise here involved as alpargatas. On the contrary, Lewis said that they were "casual shoes," "play-shoe sandals" or "sandals" while Rappaport stated that they were "known as women's casual shoes." This type of identification by men who have had extensive experience in the footwear industry seems to weaken appellant's contention that the merchandise is "known as alpargatas" within the meaning of the Argentina trade agreement.

We have carefully considered the new evidence offered in the instant case, but are of the opinion that it affords no basis for a conclusion differing from that reached in the incorporated case.

Moreover, even assuming appellant's contention is correct, that sandals may have heels, and that such heels may be of the wedge type, it does not follow that the particular type of sandal or sandal-like shoe known as an alpargata may include a wedge heel. No new evidence has been offered here on that issue.

Although there was some testimony offered in the incorporated case to the effect that alpargatas may include wedge heels, no published authority has been cited which mentions a heel in connection with such footwear. In a publication by the United States Tariff Commission entitled "Trade Agreement Between the United States and Argentina; Digests of Trade Data with Respect to Products on which Concessions were Granted by the United States, Washington 1942," the following appears on page 169 under the heading "Alpargatas":

"Description and uses.

This type of footwear is a sandal with rope soles and uppers of cotton fabric. In the United States alpargatas are used chiefly for beach wear and to some extent for household wear. In foreign producing countries, they are worn principally by the peasants and other low-income classes."

Here again there is a significant lack of mention of heels, and the uses suggested are such as ordinarily call for heelless footwear, or at least for heels lower than the two inch elevation of the instant merchandise.

Finally, as above noted, the exhibits which the parties have agreed to be alpargatas have no heels.

Under these circumstances we are of the opinion, even apart from the question as to whether sandals may include heels, that the evidence offered by appellant is insufficient to overcome the presumption of correctness attaching to the holding of the collector that the instant merchandise is not properly classifiable as alpargatas.

The decision of the United States Customs Court is *affirmed.*

JACKSON, J., Retired, recalled to participate.

———

WORLEY, Judge, specially concurring.

I dissented from the decision of this court in the incorporated case, *United States* v. *Tropical Craft Corp.*, 42 C. C. P. A. (Customs) 223, C. A. D. 598, because I was of the opinion the terms "sandal" and "sandal-like" were broad enough to include that particular importation of footwear. However, since the majority held other wise, since the issues here are the same as those in the incorporated case, and since the new evidence is not sufficient to justify a different conclusion, I concur with the majority herein.